

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 08, 2022.**

_____
**TONY M. DAVIS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE | § § | |
| PECOS INN, LLC | § § | 22-70099 |
| | § § | CHAPTER 11 |
| DEBTOR | § | |

### ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION

CAME ON FOR CONSIDERATION by the Court at the confirmation hearing held on December 6, 2022, the Debtor's Amended Plan of Reorganization dated December 5, 2022 ("Plan") filed by Pecos Inn, LLC ("Debtor") Debtor in the above-styled and numbered case. The Plan having been transmitted to all creditors, equity interest holders and parties-in-interest and the Court having reviewed the Plan and the Court having been informed that the Objection to the Plan filed by the

Newtek Small Business Finance, LLC. as been resolved, and after hearing the evidence presented, testimony of witnesses, and argument of counsel, concludes as follows:

1. The Plan complies with the applicable provisions of Title 11, and the Debtor, as the plan proponent, has complied with the applicable provisions of Title 11.

2. The Plan has been proposed in good faith and not by any means forbidden by law.

3. The requisite number of impaired classes of claims or interests voting have voted to accept the Plan.

4. All payments made or promised to be made by the Debtor or any other person for services or for costs and expenses in, or in connection with, the Plan, and incident to the case, have been disclosed to the Court and are reasonable or, if to be fixed after Confirmation of the Plan, will be subject to the approval of the Court.

5. The identity, qualifications, and affiliations of the persons who are to serve the Debtor, after Confirmation of the Plan, have been fully disclosed, and the appointment of such persons to such offices, or their continuance therein, is equitable, and consistent with the interests of the creditors and equity security holders and with public policy.

6. The identity of any insider that will be employed or retained by the Debtor and his compensation has been fully disclosed.

7. The Plan does not affect any rate change of any regulatory commission with jurisdiction over the rights of the Debtor.

8. The Plan is not likely to be followed by further need for reorganization.

9. The Plan meets the requirements of 11 U.S.C. § 1191(a).

10. The Plan does not affect any retiree benefits.

11. The Debtor reserves the right to object to the amount and allowance of all claims after confirmation. All such objections shall be filed within sixty (60) days of the Effective Date, as defined in the Plan.

It is accordingly,

ORDERED ADJUDGED AND DECREED that the Debtor's Amended Plan of Reorganization, as attached hereto as Exhibit "A", is confirmed pursuant to 11 U.S.C. § 1191(a).

Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 850
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

PROPOSED ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE | § § | |
| PECOS INN, LLC | § § § § § | Case no.22-70099-11 |
| DEBTOR | § § | CHAPTER 11 |

**AMENDED PLAN OF REORGANIZATION OF PECOS INN, LLC PURSUANT TO SECTION 1190
OF THE BANKRUPTCY CODE DATED DECEMBER 5, 2022**

TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I
INTRODUCTION

Identity of the Debtors

Pecos Inn, LLC ("Debtor") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Western District of Texas, Midland Division ("Court") on July 28, 2022. The Debtor operates a 58 room hotel in Pecos, Texas. The Debtor proposes to restructure its current indebtedness and continue its operations to provide a dividend to the creditors of Debtor.

**Explanation of Chapter 11**

Chapter 11 is the principal reorganization chapter of the Code. There are different types of Chapter 11 designations. In this case, the Debtor has chosen to proceed under a Subchapter V- Small Business Debtor Reorganization ("Subchapter V"). Pursuant to a Subchapter V Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan that has not accepted the plan.

### Explanation of the Process of Confirmation

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

**Unimpaired Class**. Claimants in Classes 1 and 8 are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

**Impaired Classes**. The Class 2 through 7 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 7. Each holder of an Allowed Claim in Classes 2 through 7 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 850, Dallas, Texas 75251. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

### Best Interests of Creditors Test

DEBTOR'S AMENDED PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE DATED DECEMBER 5, 2022 - Page 2

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with at least as much as they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest,

or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

      4.    **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

      5.    **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

      6.    **"Case"** shall mean this Chapter 11 case.

      7.    **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

      8.    **"Claimant"** shall mean the holder of a Claim.

      9.    **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

      10.    **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

      11.    **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

      12.    **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

      13.    **"Court"** shall mean the United States Bankruptcy Court for the Western District of Texas, Midland Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

    14.    **"Creditor"** shall mean any person having a Claim against Debtor.

    15.    **"Debt"** shall mean any obligation of Debtor, alone.

    16.    **"Debtor"** shall mean Pecos Inn, LLC.

    17.    **"Disbursing Agent"** shall mean the Reorganized Debtor even in the event of a confirmation under 11 U.S.C. §1191(b).

    18.    **"Effective Date"** shall mean thirty days after the Final Confirmation Date.

    19.    **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

    20.    **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

    21.    **"Final Confirmation Date"** shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

    22.    **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

    23.    **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, July 28, 2022.

    24.    **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

    25.    **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

    26.    **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

    27.    **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

    28.    **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security

interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29. **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

30. **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

31. **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

32. **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

III
REPRESENTATIONS

NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV

### FINANCIAL PICTURE OF THE DEBTOR

The Debtor has operated the hotel in Pecos, Texas for 15 years. During that time the Debtor has experiences ups nd down in connection with the oil & gas industry. During the pandemic the Debtor's business fell off dramatically and the Debtor fell behind on its obligations to its secured creditor. The Debtor's property was posted for foreclosure. The Bankruptcy was filed to provide hte Debtor breathing room to determine if the operations could be viable.

### Future Income and Expenses Under the Plan

The Debtor filed this case on July 28, 2022 and has continued to operate the hotel. Post petition the Debtor has maintained operations and has paid all it post petition debts as they have become due. The operations have been steady and the Debtor's projections reflect continued stable operations. The Debtor's projection for the next 12 months are hereto as Exhibit "A" are projections of gross income, expenses and operating income. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 100% by Ram Kunwar. Mr. Kunwar will draw a slary of $48,000 per year from the company post petition. Mr. Kunwar will remain the 100% owner of the company going forward.

### ARTICLE V.

### ANALYSIS AND VALUATION OF PROPERTY

The Debtor operates a 58 room hotel in Pecos, Texas. The Debtor's assets are the money in the bank, the furniture and fixtures in the hotel and the real property. The value of the Debtor's assets, if liquidated, would not provide a greater dividend to the unsecured creditors than proposed under this Plan.

A liquidation analysis of the Debtor's assets is attached hereto as **Exhibit "B"**.

### ARTICLE VI
### SUMMARY OF PLAN OF REORGANIZATION

The Debtor will continue in business. The Debtor's Plan will break the existing claims into 8 categories of Claimants. These claimants will receive cash payments over a period of time beginning on the Effective Date.

**Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan. Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and Subchapter V Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000.

The Class 1 Claimants are not impaired under this Plan.

**Class 2** pertains to the allowed secured claim of Reeves County in the amount of $8,901.21 and the allowed secured claim of Reeves County Tax Districts in the amount of $43,555.66. The Reeves County and Reeves County Tax Districts allowed secured claims in the amount of $8,901.21 and $43,555.66 respectively shall each be paid in full in forty-eight (48) equal, consecutive monthly installments, with the first payment being made on the first day of the first full month following the Effective Date. Post-petition interest will accrue at the rate of twelve percent (12%) per annum from the Petition Date until the Effective Date and thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue from the Effective Date until the tax debt is paid in full.

In the event the Reorganized Debtor sells, conveys or transfers any of the properties which are the collateral of the Reeves County and Reeves County Tax District's claims or post confirmation tax debts, the Debtor shall remit such sales proceeds first to Reeves County and to Reeves County Tax Districts to be applied to the Reeves County and Reeves County Tax Districts tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtor may pre-pay the pre-petition tax debt to Reeves County and Reeves County Tax Districts at any time. The Reorganized Debtor shall have sixty (60) days from the Effective Date to object to the Reeves County and Reeves County Tax District claims; otherwise, the Reeves County and Reeves County Tax District claims shall be deemed as allowed secured claims in the amount of the last amended Proof(s) of Claim. Reeves County and Reeves County Tax Districts shall retain their statutory liens securing their pre-petition and post-petition tax debts until such time as the tax debts respective to each property are paid in full. Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2023 and subsequent tax years) owing to Reeves County and Reeves County Tax Districts in the ordinary course of business as such tax debts comes due and prior to said ad valorem taxes becoming delinquent without the need of Reeves County and Reeves County Tax Districts to file administrative expense claims and/or requests for payment.

Should the Reorganized Debtor fail to make any payments as required in this Plan, Reeves County and/or Reeves County Tax Districts shall provide written notice of that default by sending written notice by email to Reorganized Debtor at Rkunwar59@gmail.com and Debtor's attorney at Eric@ealpc.com advising of that default, and providing the Reorganized Debtor with a period of thirty (30) days to cure the default. In the event that the default is not cured within thirty (30) days, Reeves County and/or Reeves County Tax Districts, as applicable, may, without further order of this Court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtor is still paying any pre-petition debt, shall be considered an event of default. Reeves County and/or Reeves County Tax Districts shall provide Debtor with written notice of that default by email to Reorganized Debtor at Rkunwar59@gmail.com and Debtor's attorney at Eric@ealpc.com and provide a thirty (30) day opportunity to cure said default. In the event that the

Reorganized Debtor fails to timely cure the post-petition and/or post-confirmation default, Reeves County and/or Reeves County Tax Districts, as applicable, may, without further order of this court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than two (2) Notices of Default. In the event of a third (3rd) default, Reeves County and Reeves County Tax Districts may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

Class 2 creditors are impaired under this Plan.

**Class 3 Claimant (Texas Workforce Commission)** are impaired and shall be satisfied as follows: the Texas Workforce Commission ("TWC") has filed a Proof of Claim asserting secured tax claim in amount of $2,508.68 for Unemployment Tax. The Debtor shall pay the TWC Proof of Claim in full in equal monthly installments with interest at the rate of 4.75% per annum in 48 equal monthly installments commencing on the Effective Date.

A failure by the Reorganized Debtor to make a payment to the TWC pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the TWC then the TWC may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the TWC may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court. The reorganized debtor shall have the opportunity to cure two (2) times over the life of the plan. In the event of the third default, the TWC may proceed with the state law remedies for collection of all amounts due under state law.

Class 3 Claimants are impaired under this Plan.

**Class 4 (Allowed Secured Claim of Newtek Small Business Finance)** is impaired and shall be satisfied as follows: On or about April 28, 2016, Debtor executed that certain US Small Business Administration Note in the original principal amount of $2,710,000 ("Note") in favor of Newtek Small Business Finance, LLC. ("Newtek"). The Note was secured by that certain Deed of Trust executed on April 28, 2016 on real property of the Debtor located at 2207 W. Third Street, Pecos, Texas (Property") recorded in the Reeves County Deed Records at Volume 1268 page 0339. The Note was also secured by that certain Security Agreement and Assignment of Leases and Rents, and that certain UCC-1 Financing Statement filed of record at 16-0010250207. (The Note, Security Agreement, Deed of Trust, Assignment of Leases and Rents and UCC-1 Financing Statement collectively "Loan Documents") Newtek has filed a secured Proof of Claim in the amount of $1,720,000[1]. The Debtor would show that value of the Property and other assets

---

[1]The Newtek Proof of Claim asserts a claim in the total amount of $2,696,851.86 of which $1,720,000 is asserted as secured and

of the Debtor secured by the Loan Documents is $1,500,000. Newtek shall have an allowed secured claim in the amount of $1,500,000 (Newtek Allowed Secured Claim") and an allowed unsecured claim in the amount of $1,196,821.86 ("Newtek Allowed Unsecured Claim"). The Newtek Allowed Secured Claim shall be paid based upon a 300 month amortization of the Newtek Allowed Secured Claim with interest at the rate of 6.25% per annum commencing on the Effective Date. The Debtor shall make 231 equal monthly payments and one payment on the 232 month following the Effective Date of all outstanding principal and accrued interest. Newtek shall retain its liens as set forth in the Loan Documents to secured the Newtek Allowed Secured Claim. Debtor shall executed any new loan documents requested by Newtek consistent with the terms of this Plan. The Newtek Allowed Unsecured Claim shall be treated in accordance with the Class 7 creditors.

The Class 4 claim is impaired under this Plan.

**Class 5 (Allowed Secured Claim of the Small Business Administration)** is impaired and shall be satisfied as follows: On or about June 7, 2020 Debtor executed that certain Promissory Note in favor of the Small Business Administration ("SBA") in the original principal amount of $150,000. On September 27, 2021 the Debtor that certain First Modification of Note (the June 7, 2020 Note and the September 27, 2021 Note collectively herein after "Note"). On or about June 7, 2020 the Debtor executed at certain Security Agreement in favor of the SBA. On September 27, 2021, the Debtor executed that certain Amended Security Agreement in favor of the SBA. (The June 7, 2020 Security Agreement and the September 27, 2021 Amended Security Agreement collectively hereinafter "Security Agreement"). The SBA properly perfected its security interest with the Secretary of State at document number 20-0026333221. The SBA has filed a Proof of Claim in the amount of $522,777.40 ("SBA Secured Claim"). The property to which the SBA Secured Claim would attach is subject to a prior security interest of both the Ad Valorem Taxes and the Newtek Secured Claim, as a result pursuant to 11 U.S.C. § 506, the SBA Allowed Secured Claim shall be valued at $0, and the SBA shall be treated as a fully unsecured creditor and treated in accordance with Class 7 herein. The SBA shall upon confirmation of this Plan, release any lien claims against the Debtor's real or personal property.

The Class 5 creditor is impaired under this Plan.

**Class 6 (Allowed Secured Claim of Choice Hotels International, Inc.)** is impaired and shall be satisfied as follows: On or about September 23, 2020 Choice Hotels International, Inc ("Choice") obtained a Judgment against Debtor in the about of $150,000 in a case style <u>Choice Hotels International, Inc, v. Pecos Inn, LLC at al</u>, case number 4:18-cv-0009, United States District Court, Western District of Texas, Pecos Division ("Judgment"). On or about March 14, 2022 an Abstract of Judgment was filed in the Deed Records of Reeves County, Texas document number 2022001715. Choice has filed a Proof of Claim in the amount of $312,031.47 ("Choice Secured Claim"). The property to which the Choice Secured Claim would attach is subject to a prior security interest of the Ad Valorem Taxes, the Newtek Secured Claim and the SBA

---

$976,851.86 is asserted as unsecured.

DEBTOR'S AMENDED PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE DATED DECEMBER 5, 2022 - Page 11

Secured Claim, as a result pursuant to 11 U.S.C. § 506, the Choice Allowed Secured Claim shall be valued at $0, and Choice shall be treated as a fully unsecured creditor and treated in accordance with Class 7 herein. Choice shall upon confirmation of this Plan, release any lien claims against the Debtor's real or personal property.

The Class 6 creditors is impaired under this plan.

**Class 7 Claimants (Allowed Unsecured Claims)** are impaired and shall be satisfied as follows: All unsecured creditors shall share pro rata in the unsecured creditors pool. The Debtor shall make monthly payments commencing thirty (30) days after the Effective Date of $2,500 into the unsecured creditors' pool. The amount represents the Debtor's disposable income as that terms is defined in 11 U.S.C. § 1191(d). The Debtor shall make distributions to the Class 7 creditors every 90 days commencing 90 days after the first payment into the unsecured creditors pool. The Debtor shall make 60 payments into the unsecured creditors pool.

The Class 7 creditors are impaired.

**Class 8 ( Current Owner)** is not impaired under the Plan and shall be satisfied as follows: The current owner will receive no payments under the Plan, however, he will be allowed to retain his ownership in the Debtor.

Class 8 Claimants are not impaired under the Plan.

## ARTICLE VII
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan. The Debtor shall be the Disbursing Agent under the Plan.

## ARTICLE VIII.
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the historical operations of the business. Based upon the projections, the Debtor believes the Plan to be feasible.

## ARTICLE IX
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE X.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. In Debtor case the assets have a value of $1,250,000. At a forced sale the Debtor believes the actual amount received would be less. The amount owed to the secured and tax creditors is at least $2,700,000, therefore, a liquidation would not result in a distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XI
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

## ARTICLE XII
## EVENTS OF DEFAULT AND EFFECT THEREOF

Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor at Ram Kunwar at Rkunwar59@gmail.com. The Debtor will be entitled to no more than two (2) notice of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated.

Nothing in this Plan is intended to release any claim a creditor has or may have against a guarantor or non-Debtor party and, further, nothing herein shall prevent that creditor from attempting to collect upon that claim from a guarantor or non-Debtor party

## ARTICLE XIII

DEBTOR'S AMENDED PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE DATED DECEMBER 5, 2022 - Page 13

## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XIV
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

## ARTICLE XVI
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case all creditors will be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## ARTICLE XVII
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate.

Dated: December 5, 2022.

Respectfully submitted,

Peco Inn, LLC

*[signature: Ram Kunwar]*

By: Ram Kunwar
Its: Managing Member

EXHIBIT 'B'

LIQUIDATION ANALYSIS

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| **ASSETS** | | |
| Cash | 30,000 | 30,000 |
| Equipment | 168,000[2] | 240,000 |
| real property | 800,000 | 1,000,000 |
| | | |
| **LIABILITIES** | | |
| ADMINISTRATIVE | 15,000 | 15,000 |
| TAXES | 27,000 | 27,0000 |
| SECURED | 3,530,000 | 1,500,000 |
| UNSECURED CREDITORS | 1,600,000 | 3,850,000 |
| | | |
| DISTRIBUTION TO UNSECURED | 0% | 5% |

---

[2] Debtor values the equipment in the location at 50% of its current appraised value if liquidated to account for removal, sales costs and a forced sale.

# PECOS INN LLC
## 2207 WEST 3RD STREET PECOS, TX 79772
## FINANCIAL PROJECTIONS FROM DECEMBER 2022 TO NOVEMBER 2023

| Year | December | January | February | March | April | May | June | July | August | September | October | November | 12 Months Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hotel Sales | 70,000 | 70,000 | 65,000 | 75,000 | 80,000 | 80,000 | 80,000 | 80,000 | 75,000 | 75,000 | 70,000 | 70,000 | 890,000 |
| Gross Profit | 70,000 | 70,000 | 65,000 | 75,000 | 80,000 | 80,000 | 80,000 | 80,000 | 75,000 | 75,000 | 70,000 | 70,000 | 890,000 |
| Operating Expenses: | | | | | | | | | | | | | |
| Utilities Expenses | 8,400 | 8,400 | 7,800 | 9,000 | 9,600 | 9,600 | 9,600 | 9,600 | 9,000 | 9,000 | 8,400 | 8,400 | 106,800 |
| Housekeeping Service & Supplies | 10,500 | 10,500 | 9,750 | 11,250 | 12,000 | 12,000 | 12,000 | 12,000 | 11,250 | 11,250 | 10,500 | 10,500 | 133,500 |
| Repair & Maintenance | 2,100 | 2,100 | 1,950 | 2,250 | 2,400 | 2,400 | 2,400 | 2,400 | 2,250 | 2,250 | 2,100 | 2,100 | 26,700 |
| Hotel Material and Supplies | 3,500 | 3,500 | 3,250 | 3,750 | 4,000 | 4,000 | 4,000 | 4,000 | 3,750 | 3,750 | 3,500 | 3,500 | 44,500 |
| Payroll Expenses | 16,600 | 16,600 | 15,700 | 17,500 | 18,400 | 18,400 | 18,400 | 18,400 | 17,500 | 17,500 | 16,600 | 16,600 | 208,200 |
| Payroll Taxes | 4,200 | 4,200 | 3,900 | 4,500 | 4,800 | 4,800 | 4,800 | 4,800 | 4,500 | 4,500 | 4,200 | 4,200 | 53,400 |
| Insurance Payment | 2,800 | 2,800 | 2,600 | 3,000 | 3,200 | 3,200 | 3,200 | 3,200 | 3,000 | 3,000 | 2,800 | 2,800 | 35,600 |
| Online Booking Channels | 700 | 700 | 650 | 750 | 800 | 800 | 800 | 800 | 750 | 750 | 700 | 700 | 8,900 |
| Sales Tax | 4,200 | 4,200 | 3,900 | 4,500 | 4,800 | 4,800 | 4,800 | 4,800 | 4,500 | 4,500 | 4,200 | 4,200 | 53,400 |
| BookKeeping | 1,400 | 1,400 | 1,300 | 1,500 | 1,600 | 1,600 | 1,600 | 1,600 | 1,500 | 1,500 | 1,400 | 1,400 | 17,800 |
| Hotel Management Systems | 875 | 875 | 813 | 938 | 1,000 | 1,000 | 1,000 | 1,000 | 938 | 938 | 875 | 875 | 11,125 |
| Advertisment & Marketing | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| Trustee Fee | 1,000 | 1,000 | 1,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,000 |
| Total Operating Expenses | 56,525 | 56,525 | 52,863 | 59,188 | 62,850 | 62,850 | 62,850 | 62,850 | 59,188 | 59,188 | 55,525 | 55,525 | 705,925 |
| Net Operating Income | 13,475 | 13,475 | 12,138 | 15,813 | 17,150 | 17,150 | 17,150 | 17,150 | 15,813 | 15,813 | 14,475 | 14,475 | 184,075 |
| Plan Payments | | | | | | | | | | | | | |
| property tax | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 7920 |
| TWC | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 780 |
| Newtek | 9,482 | 9482 | 9482 | 9482 | 9482 | 9482 | 9482 | 9482 | 9482 | 9482 | 9482 | 9482 | 113,784 |
| Unsecured | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 30000 |
| | 12707 | 12707 | 12707 | 12707 | 12707 | 12707 | 12707 | 12707 | 12707 | 12707 | 12707 | 12707 | 152484 |